May it please the Court, Jeffrey Camiso for Heather Horner. Ms. Horner asked this Court to vacate the district court's order denying her relief. The district court had no discretion to consider materials outside the pleadings when ruling on the government's motion to dismiss. Under Rule 12 in Circuit Precedent, the district court had a duty to give Ms. Horner a pro se plaintiff notice and an opportunity to present all material made pertinent to the government's motion. In addition, Ms. Horner asked that the Court issue and consider publishing an opinion on the standard that the district courts shall apply to determine whether the government's notice of administrative forfeiture satisfies due process, and in particular whether it satisfies due process when it knows that its principal means of notice, that is mailing, has failed. Let me ask you this. You want an opinion, but we really don't have much of a record, which is the problem you're initially arguing. You want an opinion based upon what might turn out to be the fact? Well, that's sort of the irony of the case is, properly, we don't have much of a record. Improperly, we do. If you look at the, I guess the idea is, if and when the government submits the documents that it attached to its motion to dismiss with a declaration that is not signed by an imposter, then those facts will be before the district court, and I'm confident that the government will do that. And so those will, I mean, I can't imagine that there's going to be a different set of notice, a different set of notices. Are you saying that we ought to issue an opinion because at some point the facts will bear the opinion out? It's just, it's sort of all timing? It's like timing? I don't. But isn't that exactly in part what Judge Fletcher says? It's your problem. You're here because you think, and arguably, that's your point, that matters outside the record were looked at. And now you're asking us to look at matters outside the record on writing this opinion? I think that... For example, do we know whether your client, is there something in the record as to whether or not your client was personally served? Or knew, had notice, excuse me, had notice of the... Had notice? Yes, actual notice. There is nothing in the record that... No. Maybe she did. What if she did? Well, I'm sorry. No. I'm interrupting you. What if she did? If she had actual notice, she's out of luck. I mean, that's true. If she had actual notice of administrative forfeiture, then she had an adequate remedy of law. That's what a trial court is supposed to do. Aren't they supposed to find out whether or not she did as one test? I agree. That's exactly what trial courts are supposed to do. But the trial court didn't do that in this case. And the further question might be if she had adequate notice when. That is to say, at the time this statement is sent in from Ritchie, but maybe it's not really from Ritchie, well, had the time in which she could have appealed the forfeiture had that, had the time run. So even if she did have notice as evidenced by that, had she got timely notice, I don't know any of those things. Right. I mean, where's my opinion going to come from? Am I going to make it up? If it's favorable, yes. I'm being facetious. I think what I'm saying is that there were matters submitted to the district court that this court, I think, can fairly assume will be the same. And there are issues out there in this context that the district courts need some guidance on. Maybe Judge Fletcher could hire this reporter from the New York Times who seems to be so good at fiction. I think, look, I think we understand your argument on the first point. Let's hear from your opponent. And you can come back and rebut to your heart's content. Thank you. Thank you. You're pro bono on this case, aren't you? I am. How were you appointed? I'm not quite sure how my name got thrown in the ring. Your partner. No. I got a phone call from, I expressed an interest in doing this. I got a phone call from the pro bono clerk. She sent me the record. And then once I was in waist deep, it was too far to wade back out. Thanks for taking the case. Counsel? Good morning. May it please the Court. My name is James Barkley. I'm an assistant U.S. attorney from Anchorage, Alaska. Counsel? Your Honors, if I might address the issue of the record, because that's what the Court last directed its attention to. The district court, I don't believe, considered matters outside the record. As the Court is aware, the government's position is that the Court denied a Rule 41e motion and properly took into account whatever doctrine is used, incorporation by reference, judicial notice, documents, the accuracy of which, the existence of which were called into question by the motion itself. In a way, if the district court were not to consider those documents, it's much like a person who sues for personal injury, calls their medical history and physical condition into question, and then the doctor is not allowed to rebut it, amplify on it, or otherwise inform the court. But the district judge, in effect, treated this as summary judgment. Isn't that right? No, Your Honor. I don't believe the court did. In fact, the court, the government, it was the government which brought, knowing that the claimant at that time was prosaic particularly, brought to the attention of the court for the first time, even before briefing on the merits of the motion, the issue of whether the court should treat that pleading as a motion, a criminal procedural motion, or it should treat it as a complaint. And the court never reached the alternative to the motion, the second alternative, which was to treat it as a complaint. The court denied it. Wasn't the court required under our law to treat it as a complaint? No, Your Honor. This is where, perhaps on the briefs, I believe there is the strongest disagreement between the parties. But my reading of the case law in this circuit is that it is wholly within the district court's discretion to decide whether to treat a 41e motion as a complaint in equity or simply treat it as a motion. Well, your adversary talked me out of an opinion. You may be about to talk me into an opinion. I may. That's to say, if the case law is unclear. If it's favorable, as counsel said. No, I'm not now interested in what the facts might turn out to be, but on the question as to whether or not this motion has to be treated as if it were a complaint. Yes. I do not believe, Your Honor. In other words, if it's mandatory, then I submit the rule that would come from your opinion would be one that directs district courts to always apply or invoke equitable jurisdiction, even if there is or was an adequate legal remedy. To me, that is the real issue. But the adequacy of the legal remedy depends upon whether or not there was notice. And that's the very question that's contested. Yes. Doesn't our Martinson case from 1987 say that a district court is obligated to treat Rule 41a as a civil complaint? Only, Your Honor, when there is no adequate. Especially when it's a pro se plaintiff. Yes. But only when there was not a finding by the district court of an adequate legal remedy. For better or worse, the district court But the finding of the adequate legal remedy is premised upon the adequacy of the notice. Isn't that right? It is, Your Honor. And isn't the adequacy of the legal notice contested here? It is. Well, then. But the district court found, Your Honor, it made a factual finding that both Ritchie and Horner had had publication and actual notice. And it based its factual finding on what? It based its factual findings on the Hieronymus Declaration, the declaration which would show up in the government's response. It was not in the initial motion. That's true, Your Honor. But some of the documents in that declaration, which came out of DEA's agency records as to the efforts it had undertaken to afford claimants notice in this case, were referred to in the motion. But this is a unilateral. I mean, there's just one side coming in and saying this is what this means. Was there an opportunity to rebut that, to take evidence of that, contest it? There was no evidentiary hearing, Your Honor, no. But that's the point, isn't it? I mean, if you say that you say, well, it's a particular way because the facts showed it to be a particular way, the question is how were the facts arrived at. And you say, well, there was no evidentiary hearing, which is another way of saying there was no opportunity to contest the factual assertions. That's what trial courts are supposed to do. Oh, no, Your Honor. I must defend the administrative process here. This the ---- Oh, you mean the government says we gave notice, that's the end of it? Yes, Your Honor. That, in fact, is the law under Duesenberry and under Mullane. If the government ---- They come in and they say it. They don't have to prove it. They just simply say it. They come in and they say, no, we gave notice. Well, that's it. Well, Your Honor, I ---- Could you put that in your complaint? I'm suggesting that the opportunity that the Court alluded to for a person to defend is intended to be provided by the sending of the notice, and since actual notice is not required, it is entirely possible and it happens frequently that a person who might otherwise like a judicial evidentiary hearing on the merits of the notice and the underlying forfeiture, the person has missed that opportunity if the notice was constitutionally attempted. And she had been ---- Now, I'm sure you're aware of the timing of this. Your reply is dated. I'm not sure when it's filed because I couldn't tell from the record in front of me. 7th of June. Judge Holland's order granting your relief is filed ---- is dated on the 5th of July. There is then a reply that comes that's filed on the 26th of July. Yes. And I'm not sure whether that's been drawn to Judge Holland's attention, but in the reply, for example, we get a lot of things that say, you know what, that at least would give one a plausible ground for argument, that the notice was sent to Ms. Horner in Alaska. It was then returned as undeliverable. The government sends that notice four days after the PSR is filed. The PSR contains information that says she's in San Diego giving the name of the town. So the government, I think, may be two different pieces of the government, but the government knew she wasn't in Alaska. So is that constitutionally sufficient notice to send it to an address when the government knows in the PSR filed four days earlier that she wasn't there? Yes, it is, Your Honor. And, again, I'm relying on Duesenberry as it explains Millane in the context of ---- But Duesenberry's a prisoner case, isn't it? It is, Your Honor, and that's exactly ---- Is she a prisoner? No, she was not. And that's exactly why the government should be afforded more deference. Not only was she not a prisoner, someone who was in the government's custody, someone who may have been moved by the government to California, she was never charged. So that's a major ---- You mean more deference. You mean if a citizen, an uncharged citizen, you want to take property away from an uncharged citizen, the government should give that uncharged citizen less preference, a deference, than they would give some prisoner. No, Your Honor. I'm adhering to the test elucidated in Duesenberry, which is just Millane, which is the reasonableness of the government's efforts to afford someone notice. And I'm just ---- But that's what you're asking. Is it reasonable, knowing one thing, sending the notice to some other place? Oh, it's entirely reasonable, Your Honor. There will be no administrative forfeiture, period. The statutory scheme that Congress devised for this could not function if all possible branches and offices of government would be ---- So what the government does is they publish their notice, a forfeiture, in the Wall Street Journal, right? Yes, Your Honor. The Wall Street Journal, because it's, of course, widely read by people whose property is seized. Well ---- That is perfectly reasonable. Do I have to take that as evidence of reasonableness? Yes, Your Honor. Yes, Your Honor. It is what DEA does, for better or for worse. That is what DEA does. It is a publication of nationwide circulation. But on the issue, Your Honor, for example, the appellant argued that because she was on food stamps, the government was also supposed to know where she was. And all I can say ---- I'm more interested in the argument that there it is right there in the PSR, in the very case that's been filed against Mr. Ritchie. So it's not some unrelated document that the government has no way of tracking down, that she's not in Alaska. The PSR gives the name of the town where she lives in Southern California. So just mailing to general delivery in Pinion Hills, California, would be all the government could do, unless ---- Well, no, I'm not sure that's all the government can do. But the government knows darn well from the PSR that she's not at the address to which you're sending the notice. Actually, that's not correct, Your Honor. As the facts show ---- It's not correct because you don't believe the PSR is true? No. I don't believe the PSR is accurate in that it said that she was living there at that time. The strongest evidence is that Ms. Horner attended a suppression hearing in which Mr. Ritchie was challenging one of the search warrants. That was on May 6th. And she also attended his trial and his imposition of sentence. So she was at least physically in Anchorage on three separate occasions after ---- But, I mean, she wouldn't ---- She couldn't have flown up for those things? I mean, this all seems to me things that had to be thrashed out at trial. I mean, these are all maybes. Maybe she got adequate notice and maybe she didn't. That ---- Your Honor, I agree an evidentiary hearing would be necessary to determine whether she received actual notice. But actual notice is not the law. Duesenberry would ---- But I think if the ---- if she actually lived in San Diego, if the government had noticed ---- excuse me ---- in Pinion Hills, if the government had noticed through the PSR that she had lived in Pinion Hills, the government nonetheless, four days later, sends notice to her prior address in Alaska, that raises for me at least an arguable constitutional question as to the adequacy of notice under Malayan. Your Honor, may I represent to the Court what the ---- where the information comes from when DEA, the agency, interprets its own statutory standard, that is, the one where a person appears to have an interest in the property. The information flow is as follows. The criminal agent, the agent who investigated the criminal case, is the source of the information that is forwarded to DEA headquarters in Washington, D.C. And that is where the notices are sent out. So if the government is to be held to the standard the Court is suggesting, the standard of finding something in a PSR, here are two things. Number one, as I've indicated in my briefs, the pre-sentence report is a confidential document. It's never to be shown to agents, never. And it would have required a court order to be shown to anyone for purposes of sending out these notices, those materials in my brief. But that is, in fact, as a practical matter, how ---- But where she lived was not confidential. Well, if it was in the PSR, it was not something an agent ---- No, this is a different question. Where she lived is not confidential. The government knows, given that it wrote the PSR, where she lives. So it would have been possible for the government knowing where she lives to have sent that information without necessarily forwarding the PSR. Yes, Your Honor. It would be possible for a pre-sentence officer to become involved in the forfeiture case and tell ---- So if the government is going to take somebody's property, it might not be too much to ask that if the government knows where the person is, that it makes some arrangements to transmit that information to the person sending out the notice. Your Honor, I think there's a very serious question, even on the record that is before the Court, as to whether the government knew where she lived. That is what's in the PSR. There's the ---- I have a serious doubt as to its accuracy simply because another suggested place to go for an alternative address was the face sheet that's been submitted in the excerpts of record by appellant indicating that appellant was in a child custody proceeding, and that gave a Victorville, California address, Your Honor, for a drug rehab center. Oh, okay. But that's also not Alaska. That's also not Alaska. But it's not clear where she was. She was physically present in Alaska post-April 29th, however. But the government's position that a claimant in Ms. Horner's position, an uncharged, unincarcerated citizen seeking return of property, has a perfect right to contest the adequacy of notice to her, but if the notice doesn't reach her, she can't raise it. If the notice meets the test in Mullane, yes. If it does not, no. Sounds like Joseph Heller. Well, Your Honor, I think the case law, which has been cited by both sides in this case dealing with whether notice was adequate under certain circumstances under Mullane, there is a catch-22 built into it. Well, but Mullane's quite an interesting case because what it says is, was the notice reasonably calculated under all the circumstances to reach the particular person who needed the notice? That's almost a direct quotation from Mullane. Yes. And it seems to me there are enough factual questions that I can't tell whether or not in this case this notice was reasonably calculated under all the circumstances to reach her. Your Honor, I can't say that that's an unreasonable position. And given that that's so, I think you've got to have some sort of a genuine hearing, basically a summary judgment in the district court, because the premise for the underlying problem in the district court is was there adequacy of notice. If the notice was adequate, then she has a problem because she has an adequate legal remedy. If the notice wasn't adequate, then she goes forward. Your Honor, that's certainly correct. Logically, that is correct. Your Honor asked a question earlier about whether she may or may not have had actual notice and when, when she had actual notice. I would like to direct the Court's attention to something in the record that I don't think the district court articulated, but it is evidence in the record that would support the denial of the motion. And it is this. The Court may recall the petition, and again, of course, if the government does not prevail on the extraneous records having been considered, if that was improper, then this doesn't matter. But if that was not improper in the Court's view, the district court also had before it a copy of the petition. The petition also was something that was referenced by the appellant in her motion, 41E motion, the petition that was supposedly filed by Mr. Ritchie but had language in it at least indicating that I, Heather Horner, signed by a person, apparently Heather Horner, want my video camera back. If the Court looks at that document carefully, here is what the Court will see. Number one, there is a number on it that is a – it's called a caller number, but it's a number that is only available when you get one of the mailed notices, when you actually receive a mailed notice. It's got a number to write to, a box number, at headquarters for DEA. Second thing, and I go into the all of the circumstances test that the Court has properly mentioned. Second, it's signed November 8th by Mr. Ritchie. The deadline for any of this property was November 7th, but it's signed on November 8th by Mr. Ritchie and isn't mailed to DEA or received, I should say, by DEA until February of the next year. But attached to it, Your Honor, are a number of documents purportedly submitted by Heather Horner to support the legitimate source of the $3,000 in income. There are receipts there for having worked at a certain job in Anchorage, making a modest amount of money, handwritten notations about RIPI, which is a gambling – charity gambling game in Alaska, and most important, the sale of a number of pieces of property that supposedly generated the $3,000 or some of it that was taken from her. Now, how could those documents be submitted by Mr. Ritchie one day after the deadline would have expired for the actual notice without there having been some communication about this petition and the actual notice between Mr. Ritchie and Ms. Horner? And I argue this in my opposition to the motion, and I believe that's what the judge did, although he didn't articulate it. That's where the – that's what supports the judge's finding that she received actual notice. You're saying there's no – there's no argument that could be made in support of that? There's nothing that could be said about how this seeming coincidence occurred? Maybe she was told something, maybe he was told something in the course of the proceedings. Look, you better make sure, you know, there's going to be a question on the money, so you better make sure that you can document it and so forth. I mean, who knows? That's the problem. We don't have that record, because you're asking us to look at some documents which arguably are outside the record and come to certain inescapable conclusions, firm conclusions as to what they mean. No record, no chance, no meaningful chance to contest it and to – and to present to the trier of fact some alternate explanations. That's what you're asking us to do. I am, if the Court agrees with the legal argument that the notice which was afforded was constitutionally permissible. The Joseph Heller aspect of this case, I think, is also shown by the fact there's just a built-in ambivalence in terms of the discussion of the record, but it's also ironic, I guess. I think the documents of which were considered, they cut both ways. I have had times in briefing the case understanding why the appellant didn't want the documents in, because the documents themselves prove that she didn't receive actual notice, that only one attempt was made and no follow-up was done, and that nothing at all was ever sent to her about the guns. So I believe they're powerful for her case, and yet at the same time, I believe they also cut in favor of the government. Well, you know, it's entirely possible that if and when this goes back to the district court for an evidentiary hearing, or maybe it can be done on summary judgment with this document, that the government will prevail. But this has been a long nuisance of a process to get up to here and back again. It would have been pretty much foreshortened if the government had said in its opposition papers, because the constitutionality of the notice is here possibly in question. And we need an evidentiary hearing tantamount to summary judgment. Instead of merely saying something like arguably in the papers submitted to Judge Holland, I think we cut corners and ended up taking an awful long way around. Well, Your Honor, the only time the word arguably was used in the response to the opposition to the 41e motion was with regard to whether the complaint should be treated as one in equity or whether it should be treated as a motion. I know exactly where that word was used. Yes. But the arguably was never used. I believe it was entirely defensible for the government to take the position that because she raised the issue of whether the notice had been adequate in her pleading, that the government could supply those pleadings. For example, I think on remand ---- My point is that I think the government's position, whether it was arguable as to whether or not this had to be treated as summary judgment, given that the quality of the notice or the constitutionality of the notice was directly what was at issue, and because that then was the determining factor as to whether or not there was an available, administered remedy, the government has simply put us all to this trouble instead of simply saying, you know what, we have to have a hearing on this judge. It won't take us very long because it's a slam-dunk win for us, but we have to have a hearing. So here we are months, years later, up to the United Circuit, back again, only to do what the government could have said to Judge Holland in the first instance could have been resolved in a very short time. My Honor, evidentiary hearings are for judicial foreclosures by and large, and that is why the government made the decision in this case not to afford an evidentiary hearing. But evidentiary hearing on the quality of notice. Okay. Thank you very much for your argument. We appreciate you. You have a difficult position. Thanks for your argument. Rebuttal? I don't think you need 16 minutes. I don't. I think very little of what was raised by the government hasn't been thoroughly hashed out in the briefs or by the Court's questions. Is it a complaint? Absolutely it's a complaint. Everybody knows it's a complaint. The government knew it's a complaint. You've got to treat it like a complaint. But if I'm going to be a glory hound, you know what, rule against me on that and let's look at the evidence. The idea that notice here was constitutionally sufficient, putting aside how the government expressed, is outrageous. The date of the seizure, wrong. Place of the seizure, utterly meaningless. Seized from Donald Ritchie, unless one entertains the possibility that the gun was taken off of Ritchie while he was in Federal custody, not possible. It's outrageous. I mean, I'm sorry, but this is not acceptable. We understand your argument. Thank you. Thank you for coming in. The case just argued will be submitted.
judges: Hawkins, W.fletcher, Breyer